ORIGINAL

FILED
CLERK, U.S. DISTRICT COURT

AUG 18 2020

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA; AND THE STATE OF CALIFORNIA, EX REL. [UNDER SEAL] | No. CV 18-10632 MWF (RAOx) |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |
| vs. | **[SEAL EXTENDED TO DECEMBER 11, 2020 BY MAY 28, 2020 ORDER OF THE COURT]** |
| [UNDER SEAL] | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

**SEALED CASE – DO NOT PUT ON PACER**

FENTON LAW
GROUP LLP

1

**FIRST AMENDED COMPLAINT**

FILED
CLERK, U.S. DISTRICT COURT

AUG 1 8 2020

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA; AND THE STATE OF CALIFORNIA, EX REL. [UNDER SEAL] | No. CV 18-10632 MWF (RAOx) |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |
| vs. | **[SEAL EXTENDED TO DECEMBER 11, 2020 BY MAY 28, 2020 ORDER OF THE COURT]** |
| [UNDER SEAL] | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

**SEALED CASE – DO NOT PUT ON PACER**

FENTON LAW
GROUP LLP

1

**FIRST AMENDED COMPLAINT**

Henry R. Fenton, State Bar No. 45130
Dennis E Lee, State Bar No. 164360
**FENTON LAW GROUP, LLP**
1990 S. Bundy Drive, Ste. 777
Los Angeles, CA  90025
Telephone:  310-444-5244
Facsimile:   310-444-5280

*Attorneys for Qui Tam Relator/Relator*
*Arash Alborzi, M.D.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA; AND THE STATE OF CALIFORNIA, EX REL. ARASH ALBORZI, M.D.,<br><br>          Relators,<br><br>     vs.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA; KECK SCHOOL OF MEDICINE OF USC; USC VERDUGO HILLS HOSPITAL; CONCORD HOSPITALIST GROUP;  ELEVATE HEALTH GROUP; NARBEH TOVMASSIAN, M.D.; GAREN DERHARTUNIAN, M.D.; and DEVINDER GANDHI, M.D.,<br><br>          Defendants. | No. CV 18-10632 MWF (RAOx)<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**FIRST AMENDED COMPLAINT FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730**<br><br>**DEMAND FOR JURY TRIAL** |

**FIRST AMENDED COMPLAINT FOR
VIOLATIONS OF THE FALSE CLAIMS ACT
AND CALIFORNIA FALSE CLAIMS ACT**

## INTRODUCTION

1.  Qui tam Plaintiff/Relator ARASH ALBORZI, M.D. (referred to

hereinafter as "Plaintiff" and/or "Relator") brings this action on his own behalf and

on behalf of the United States of America and the State of California to recover

civil damages and penalties under the False Claims Act ("FCA," 31 U.S.C. § 3729

*et seq.*) and the California False Claims Act ("CFCA," Cal. Gov. Code § 12650 *et*

*seq.*).

2.  Beginning on or around July 2017 and continuing to the present day,

Defendants UNIVERSITY OF SOUTHERN CALIFORNIA, KECK SCHOOL OF

MEDICINE OF USC; USC VERDUGO HILLS HOSPITAL, CONCORD

HOSPITALIST GROUP, ELEVATE HEALTH GROUP, NARBEH

TOVMASSIAN, M.D., GAREN DERHARTUIAN, M.D., and DEVINDER

GANDHI, M.D. knowingly and routinely made and/or presented records,

statements, and claims to federal and state health insurance programs including but

not limited to Medicare, Medicaid, and Medi-Cal.  These claims falsely certified

that such claims were in compliance with the Stark Act, 42 U.S.C. § 1395nn, the

Anti-Kickback Law, 42 U.S.C. § 1320a-7b, California Business and Professions

Code § 650 *et seq.*, California Health and Safety Code § 445, California Welfare

and Institutions Code 14107.2, and California Business and Professions Code

FENTON LAW
GROUP LLP

2273(a).

## JURISDICTION AND VENUE

3.    This action arises under the laws of the United States, the FCA. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331, 1367 and 31 U.S.C. § 3732.  This Court has jurisdiction over the CFCA claim because Defendants' violations of the CFCA derive from a common nucleus of operative fact.

4.    This Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732 because each and every Defendant has minimum contacts with, resides in, and does business in the Central District of California.

5.    Venue in this District is proper because Defendants reside in and do business in the Central District of California.  At all times relevant to this Complaint, Defendants regularly conducted substantial business in this District.  All violations alleged in this Complaint occurred in this District.

6.    Relator is the original source of the allegations in this Complaint, which was provided along with written disclosure of substantially all material evidence of the allegations of this Complaint to the United States pursuant to 31 U.S.C. § 3730(b)(2).

## PARTIES

7.    Relator is a physician licensed to practice medicine by the State of

California residing at all relevant times in Glendale, CA.

8. Relator is informed and believes, and on the basis of such information and belief, alleges that at all times herein mentioned Defendant UNIVERSITY OF SOUTHERN CALIFORNIA ("USC") is a California nonprofit corporation located in the County of Los Angeles.

9. Relator is informed and believes, and on the basis of such information and belief alleges, that Defendants KECK SCHOOL OF MEDICINE OF USC ("Keck"), and USC VERDUGO HILLS HOSPITAL ("VHH") are corporate entities that are owned and operated by, managed, and/or otherwise subsumed under Defendant USC.

10. Defendant CONCORD HOSPITALIST GROUP ("Concord") is a California corporation located in Glendale, California. Hospitalists are primary care physicians who generally work exclusively in a hospital setting without having outpatient practices.

11. Defendant ELEVATE HEALTH GROUP ("Elevate") is a California corporation, located in Glendale, California.

12. Defendant NARBEH TOVMASSIAN, M.D. ("Dr. Tovmassian") is a primary care physician duly licensed in the State of California who practices medicine in Glendale, California.

13. Defendant GAREN DERHARTUNIAN, M.D. ("Dr. Derhartunian") is a primary care physician duly licensed in the State of California who practices

medicine in Glendale, California.

14.   Defendant DEVINDER GANDHI, M.D. ("Dr. Gandhi") is a primary care physician duly licensed in the State of California who practices medicine in Glendale, California.

15.   The three owners of Defendant Concord are Dr. Tovmassian, Dr. Derhartunian, and Dr. Gandhi.

16.   The two owners of Defendant Elevate are Dr. Tovmassian and Dr. Derhartunian.

17.   ELIZABETH MASLOW, M.D. ("Dr. Maslow"), a non-party, is a physician duly licensed to practice in the State of California and an infectious disease specialist.  Infectious disease medicine is a subspecialty of internal medicine.

18.   WINT THU HUN, M.D. ("Dr. Hun"), a non-party, is a physician duly licensed to practice in the State of California and an infectious disease specialist. Relator is informed and believes and accordingly alleges that each Defendant is an agent and employee of each and every Defendant and, in performing the acts alleged in this complaint, was acting in the course and scope of said agency and employment. Relator further is informed and believes and accordingly alleges that the agents and employees of each Defendant were acting within the purpose and scope of said agency and employment and on behalf of each other and each of the Defendants ratified and approved the acts of the other Defendants and of the agents

1    and employees of the various Defendants.

2    **STATUTORY FRAMEWORK**

3        19.    The California False Claim Act is substantially similar to the federal

4

5    False Claims Act.  For purposes of outlining statutory framework, the FCA is

6    referenced with the understanding that the CFCA has mirroring provisions.

7        20.    To prove a claim under the FCA, a Relator, whether the government or

8

9    a relator, must show that the defendant "(A) knowingly presents, or causes to be

10   presented, a false or fraudulent claim for payment or approval; (B) knowingly

11
     makes, uses, or causes to be made or used, a false record or statement material to a
12

13   false or fraudulent claim; [or] conspires to commit a violation of [the FCA]." 31

14   U.S.C. § 3729(a)(1)(A-C). The CFCA contains identical provisions at California

15
     Government Code section 12651(a).
16

17       21.    The key elements of an FCA claim under a false certification theory

18   are: "(1) a false statement or fraudulent course of conduct, (2) made with scienter,

19
     (3) that was material, causing (4) the government to pay out money or forfeit
20

21   moneys due." (*U.S. ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1174

22   (9th Cir. 2006) (*Hendow* ).)

23
         22.    Actionable express false certification under the FCA occurs where a
24

25   defendant makes a claim for payment from a federal program, with express

26   certification of compliance with a statute or regulation which conditions payment
27
     on certification of compliance, where the defendant knows the certification was
28

false when made.  (*Hendow*, *supra*, 461 F.3d at 1171-1173.)

23.   Actionable implied false certification under the FCA "occurs when an entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim." (*Ebeid ex rel U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (*Ebeid* ).) Under an implied false certification theory, "liability can attach when the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement.  In these circumstances, liability may attach if the omission renders those representations misleading." (*Universal Health Services, Inc. v. U.S.*, 136 S.Ct. 1989, 1995 (2016).)  California has expressly recognized the viability of an implied false certification theory of liability under the CFCA in *San Francisco Unified School Dist. ex rel. Contreras v. Laidlaw Transit, Inc.*, 182 Cal.App.4th 438, 448-449 (2010) (*Contreras I* ).

24.   Incentivizing patient referrals is illegal under several federal and California statutes.  This applies to both individual physicians and medical entities, such as hospitals and physician groups. (42 U.S.C. § 1320a-7b(b), 42 U.S.C. § 1395nn, California Business and Professions Code § 650 *et seq*., California Health and Safety Code § 445, California Welfare and Institutions Code 14107.2, and California Business and Professions Code 2273(a).)

25.     The Anti-Kickback Statute ("AKS"), 42 U.S.C. section 1320a-7b, prohibits payment or receipt of monetary and non-monetary remuneration to induce referrals.  The purpose of the Anti-Kickback Law is to "protect the Medicare and Medicaid programs from increased costs and abusive practices resulting from provider decisions that are based on self-interest rather than cost, quality of care or necessity of services." (*U.S. v. Patel*, 778 F.3d 607, 612 (7th Cir. 2015).)  The Anti-Kickback Law also has the purpose "to protect patients from doctors whose medical judgments might be clouded by improper financial considerations." (*Ibid.*)

26.     The Stark law, 42 U.S.C. section 1395nn(a), prohibits abusive self-referrals.  It was enacted "to address the strain placed on the Medicare Trust fund by the overutilization of certain medical services by physicians who, for their own financial gain rather than their patients' medical need, referred patients to entities in which the physicians held a financial interest." (*American Lithiotropy Soc. v. Thompson*, 215 F.Supp.2d 23, 26 (D.D.C. 2002).)  The Stark Law expressly conditions Medicare reimbursement on compliance with its provisions.  (42 U.S.C. § 1395nn(a)(2).)

27.     California law includes provisions analogous to the Stark Law which prohibit physicians from referring patients to an entity with which they have a financial relationship.  (Cal. Bus. and Prof. Code, § 650 et seq.; Cal. Health and Safety Code § 445.)

28.     "Falsely certifying compliance with the Stark or Anti–Kickback Acts

in connection with a claim submitted to a federally funded insurance program is actionable under the FCA." (*U.S. ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009); see also *United States ex rel. Banigan v. PharMerica, Inc.*, 950 F.3d 134, 137 (1st Cir. 2018).)

29.     In addition, in 2010, the Anti-Kickback Law was amended to provide "an express link" to FCA liability, when subsection (g) was added to 42 U.S.C. section 1320a-7b, providing, "a claim that includes items or services resulting from a violation fo this section constitutes a false or fraudulent claim" for purposes of the FCA. (*Guilfoile v. Shields*, 913 F.3d 178, 189-190 (1st Cir. 2019) (*Guilefoile* ).)  At least several courts have held that an AKS violation that results in a federal health care payment is a per se false claim under the FCA. (*Id.* at 190; *United States ex rel. Lutz v. United States*, 853 F.3d 131, 135 (4th Cir. 2017).)

## FACTUAL ALLEGATIONS

30.     Dr. Tovmassian, Dr. Derhartunian, Dr. Gandhi, Dr. Maslow, and Dr. Hun all have staff privileges and provide medical services at VHH.  Dr. Tovmassian, Dr. Derhartunian, and Dr. Gandhi also have separate outpatient practices.  Dr. Tovmassian and Dr. Derhartunian's outpatient practices are conducted in whole or in part through Defendant Elevate, which they own.

31.     All of the Defendant regularly bill insurance payers for medical services provided, and a large percentage of the billings by both VHH and the physicians at VHH generally, including Concord, Elevate, Dr. Tovmassian, Dr.

**FIRST AMENDED COMPLAINT**

Derhartunian, Dr. Maslow, and Dr. Gandhi, are to state and federal payers, including Medicare and Medicaid.

32.     Relator has learned of a complex cycle of corrupt financial relationships involving VHH, Concord, Elevate, Dr. Tovmassian, Dr. Derhartunian, Dr. Gandhi, Dr. Maslow, and Dr. Hun, in violation of the Anti-Kickback Law, the Stark Law, and related state laws, which is set forth below.  Relator has learned of these violations from working at VHH as an infectious disease specialist.  Relator joined the medical staff of VHH in about 2008 and is currently still on the staff.  As an active member of the staff, Relator has had the opportunity to directly observe Defendants' behavior and to interact with multiple physicians and administrators at VHH, including Dr. Tovmassian, Dr. Derhartunian, Dr. Gandhi, Dr. Maslow, and Dr. Hun.  To the extent that some of the details of these financial relationships are exclusively in the Defendants' possession, discovery will allow Relator to allege those details with greater specificity.  (*U.S. ex rel. Holder v. Special Devices, Inc.*, 296 F.Supp.2d 1167, 1170 (C.D. Cal. 2003); *U.S. ex rel. Grubbs v. Kannegati*, 565 F.3d 180, 191 (3rd Cir. 2009).)

33.     Prior to about July 2017, VHH did not use hospitalists.  Instead, VHH followed the traditional model of having a panel of primary care physicians admit unassigned patients to the emergency room.  The admitting physicians would refer patients to specialists as needed.  These referrals would be made with the interests of the patient in mind, to the specialist best equipped to handle that patient's

condition.  Because the panel of admitting physicians consisted of multiple primary care physicians unaligned with any group, no one physician or group controlled referrals to specialists, ensuring reasonably fair referrals to specialists.

34.    Prior to about July 2017, Dr. Gandhi has been on the medical staff at VHH for many years, and Dr. Tovmassian and Dr. Derhartunian had been on the medical staff for about three years.

35.    In or about July 2017 Defendant Concord, at the direction of its owners, Dr. Tovmassian, Dr. Derhartunian, and Dr. Gandhi, entered into an exclusive contract with Defendant VHH to provide hospitalist (primary care) services to emergency room patients with no previously assigned primary care physician at VHH. Approximately 80 percent of emergency room patients at VHH arrive with no previously assigned primary care physician.

36.    According to the website for the California Secretary of State, Concord was formed on February 1, 2017.  Relator is informed and believes, and on the basis of such information and belief alleges, that Defendant Concord was specifically formed for the purpose of participating in the various corrupt financial practices set forth further herein.  As a new hospitalist group, Concord, with no track record, was somehow able to secure an exclusive contract with a major hospital, VHH, which would not have been realistically possible without the corrupt financial dealings between the parties.  The only way Concord, Elevate, and their owners, Dr. Tovmassian, Dr. Derhartunian, and Dr. Gandhi, were able to make

their arrangement with VHH profitable was to engage in the various illegal kickbacks and self-referrals discussed below.

37.    Relator is informed and believes, and on the basis of such information and belief, alleges that the exclusive contract between Defendant Concord and Defendant VHH is structured far below market value for comparable hospitalist services.  Relator's information and belief are derived in part by comparing the value of the contract, which he has learned from several sources at VHH, with an estimate of the market value for Concord's hospitalist services, based on their patient volume and overhead at VHH, compared with those of other similarly situated hospitalist groups at other comparable hospitals.  As a result of the below-market contract, VHH has been able to retain a larger share of the payments it receives from insurers, including Medicare and Medicaid.

38.    Relator is informed and believes, and on the basis of that information and belief alleges, that it was in exchange for the below-market value contract with Concord that VHH dissolved its infectious disease call panel, which it is required by federal law to maintain (42 U.S.C. §§ 1395dd(b)(1)(A), 1395cc(I)(iii), 42 C.F.R. § 489.24(j)(1)), in or about July 2018, of which Relator and Dr. Maslow were the only members.  The only other practicing infectious disease specialist at VHH, Dr. Hun, was a relatively young and inexperienced physician who was not on the call panel.  After dissolution of the call panel, which was done with no prior notice or explanation as to the reason, Concord referred all infectious disease consultations to

Dr. Maslow or Dr. Hun, but primarily to Dr. Hun, and none to Relator.  This diversion of patients to Dr. Hun and Dr. Maslow was for the financial benefit of Concord, as discussed further herein.

39.   Relator is informed and believes, and on the basis of such information and belief, alleges that, since at least early 2017, Dr. Maslow had entered into a financial arrangement with Dr. Hun wherein Dr. Maslow receives 30 percent of Dr. Hun's reimbursements for medical services, including reimbursements from federal and state payers such as Medicare and Medicaid.  Relator was informed of this arrangement by Dr. Maslow herself.  As a result, referrals by Concord to Dr. Maslow for infectious disease services are effectively referrals to Dr. Hun, as Dr. Maslow has 'passed' all or nearly all these patients to Dr. Hun, in exchange for kickbacks from Dr. Hun.

40.   Defendant Elevate Health Group provides medical services including, but not limited to, outpatient primary care and nursing home services.

41.   Relator is informed and believes, and on the basis of such information and belief alleges, that Dr. Hun is also employed either directly or as an independent contractor for Defendant Elevate.

42.   Relator is informed and believes, and on the basis of such information and belief alleges, that Defendant Concord, under the direction of its owners, Dr. Derhartunian, Dr. Tovmassian, and Dr. Gandhi, self-refer VHH patients to Defendant Elevate, Dr. Gandhi and Dr. Hun, through Elevate, for post-

hospitalization healthcare services. These services include primary care at Dr. Derhartunian, Dr. Tovmassian, and Dr. Gandhi's outpatient practices. These services also include nursing home services provided by Dr. Derhartunian, Dr. Tovmassian, Dr. Gandhi, and Dr. Hun. Insurers are billed for these various medical services, including Medicare and Medicaid.

43. Relator is informed and believes, and on the basis of such information and belief alleges, that Defendant Concord, under the direction of Dr. Tovmassian and Dr. Derhartunian, benefits financially from self-referring Defendant VHH patients to Dr. Hun for infectious disease consultations because Dr. Hun, in exchange for these referrals, and also in exchange for referrals to her for outpatient nursing home services, through Elevate, for which she is an employee or independent contractor, provides a percentage of her billings from services provided for these nursing home referrals as kickbacks to Elevate, owned by Dr. Tovmassian and Dr. Derhartunian. Relator learned of the kickback arrangement between Dr. Hun and Elevate from Dr. Maslow. These billings derived from insurance payments, including from Medicare and Medicaid.

44. Relator is informed and believes, and on the basis of that information and belief alleges, that as a result of their high referral rates to various nursing homes from VHH, Dr. Derhartunian, Dr. Tovassmian, and Dr. Gandhi have been financially rewarded by nursing homes by being given sham paid positions as board members, and/or directors, in addition to the financial benefits they receive as the

primary care physicians for the referred patients, and are also assigned a disproportionate number of unassigned patients at those nursing homes.

45.     Relator is informed and believes, and on the basis of such information and belief alleges, that Defendants USC, Keck, and VHH also benefit financially by referrals back to VHH, by Defendant Elevate, under the direction of Dr. Tovmassian and Dr. Derhartunian, and by Dr. Gandhi, of outpatients and nursing home patients.  These referrals not only financially reward VHH but also benefit Concord, Dr. Tovmassian, Dr. Derhartunian, and Dr. Gandhi because they are able to provide primary care services to these patients at the much higher rates Medicare provides for services in hospitals, as compared to services in nursing homes,  This is a violation of the Stark Law against self-referrals.

46.     The exclusive contract between Defendant Concord, via its owners, Dr. Tovmassian, Dr. Derhartunian, and Dr. Gandhi, and Defendant VHH violated, and continues to violate, the Anti-Kickback Law (42 U.S.C. § 1320a-7b(b)) because it constituted an indirect exchange of remuneration from Concord and its owners to VHH, via the below-market value contract, in exchange for VHH colluding to channel a large percentage of infectious disease patients to Dr. Hun and Dr. Maslow, to the financial benefit of Concord and its owners, and to the ultimate detriment of state and federal insurance payers, including Medicare and Medicaid.

47.     The exclusive contract between Defendant Concord, via its owners, Dr. Tovmassian, Dr. Derhartunian, and Dr. Gandhi, and Defendant VHH also

FENTON LAW
GROUP LLP

-16-

**FIRST AMENDED COMPLAINT**

violated, and continues to violate, both the Anti-Kickback Law and the Stark Law

(42 U.S.C. § 1395nn), as well as related California law, because the diverted patient

referrals to Concord and its owners was rewarded by the referral back to VHH of

patients from the private and nursing home practices of Elevate, Dr. Tovmassian,

Dr. Derhartunian, and Dr. Gandhi.  These referrals back to VHH also constituted

direct violations of the Stark Law and related California law by Defendants Elevate,

Dr. Tovmassian, Dr. Derhartunian, and Dr. Gandhi, as they effectively self-referred

these patients back to themselves, via their hospitalist group, Concord, where they

could bill federal payers at the much-higher hospital rates, compared with private

and nursing home rates.

48.     In summary, the corrupt financial dealings between VHH and Concord

and its owners violated 42 U.S.C. section 1320a-7b, 42 U.S.C. section 1395nn,

California Business and Professions Code section 650 *et seq*., California Health and

Safety Code section 445, California Welfare and Institutions Code 14107.2, and

California Business and Professions Code section 2273(a), by inducing illegal

remuneration including, but not limited to, bribes, fee-splitting, kickbacks, and self-

referrals.

49.     The financial arrangement between Dr. Hun and Defendant Elevate,

via its owners, Dr. Derhartunian and Dr. Tovmassian, violated, and continues to

violate, 42 U.S.C. section 1320a-7b, 42 U.S.C. section 1395nn, California Business

and Professions Code section 650 *et seq*., California Health and Safety Code

**FIRST AMENDED COMPLAINT**

section 445, California Welfare and Institutions Code section 14107.2, and California Business and Professions Code section 2273(a), by inducing illegal remuneration including, but not limited to, bribes, fee-splitting, kickbacks, and self-referrals.

50.     The financial arrangement between Dr. Hun and Defendant Concord, via its owners Dr. Tovmassian, Dr. Derhartunian, and Dr. Gandhi, violated, and continues to violate, 42 U.S.C. section 1320a-7bs, 42 U.S.C. section 1395nn, California Business and Professions Code section 650 *et seq*., California Health and Safety Code section 445, California Welfare and Institutions Code section 14107.2, and California Business and Professions Code section 2273(a), by inducing illegal remuneration including, but not limited to, bribes, fee-splitting, kickbacks, and self-referrals.

51.     The financial arrangement between Dr. Maslow and Defendant Concord, via its owners, Dr. Tovmassian, Dr. Derhartunian, and Dr. Gandhi, in which Dr. Maslow receives referrals which are then 'passed along' to Dr. Hun, who provides kickbacks to both Dr. Maslow and Defendant Elevate, violated, and continues to violate, 42 U.S.C. section 1320a-7b (b), 42 U.S.C. section 1395nn, California Business and Professions Code section 650 *et seq*., California Health and Safety Code section 445, California Welfare and Institutions Code section 14107.2, and California Business and Professions Code section 2273(a), by inducing illegal

**FIRST AMENDED COMPLAINT**

remuneration including, but not limited to, self-referrals, bribes, fee-splitting,

kickbacks, and/or non-monetary compensation.

52.    The financial arrangement between Dr. Maslow and Dr. Hun violated,

and continues to violate, 42 U.S.C. section 1320a-7b, 42 U.S.C. section 1395nn,

California Business and Professions Code section 650 *et seq.*, California Health and

Safety Code section 445, California Welfare and Institutions Code section 14107.2,

and California Business and Professions Code section 2273(a), by inducing illegal

remuneration including, but not limited to, bribes, fee-splitting, kickbacks, and self-

referrals.

## CLAIM I

## VIOLATION OF THE UNITED STATES FALSE CLAIMS ACT

## 31 U.S.C. § 3729(a)(1)(A)-(B)

*(Against all Defendants)*

53.    Relator realleges and incorporates the above paragraphs as though

fully set forth herein.

54.    Any person who "knowingly presents, or causes to be presented, a

false or fraudulent claim for payment or approval" or "knowingly makes, uses, or

causes to be made or used, a false record or statement material to a false or

fraudulent claim" is "liable to the United States Government for a civil penalty of

not less than $5,000 and not more than $10,000[…], plus 3 times the amount of

damages which the Government sustains because of the act of that person." (31

U.S.C. § 3729(a).)  "A person may bring a civil action for a violation of section 3729 for the person and for the United States Government."  (31 U.S.C. § 3729(b).)

55.     Relator is informed and believes, and thereon alleges Defendants, acting either on their own behalf or through its physicians and administrative staff and under supervision of its officers, knowingly or in reckless disregard of the truth engaged in a pattern of patient referrals which was in direct violation of the federal Anti-Kickback Law and Stark Law.

56.     Defendants knowingly, or in reckless disregard of the truth, made or caused to be made false and/or fraudulent medical records to be presented for reimbursement, and knowingly or in reckless disregard of the truth presented or caused to be presented false and/or fraudulent claims for reimbursement to Medicare, a federally-funded health insurance program.

57.     The claims submitted for reimbursement were fraudulent because they either expressly or impliedly certified that services billed for were in compliance with federal and state anti-kickback and physician self-referral laws.  For example, claim form CMS-1500 for Medicare, Medicaid, and other federal health care payment programs, which is the form generally used by the Defendants and by physicians at VHH in general, includes the following certification: "this claim, whether submitted by me or on my behalf by my designated billing company, complies with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment, including but not limited to the Federal anti-

1  kickback statute and Physician Self-Referral Law (commonly known as Stark

2  law).”

3

4      58.   Defendants knew these claims were not in compliance with the federal

5  and state anti-kickback and physician self-referral laws because Relator brought the

6  illegal financial arrangement to Defendants' attention through conversations and in

7  writing between December 2017 and July 2018.

8

9      59.   Further, Defendants very likely knew even before being informed by

10  Relator that these claims were not in compliance with the aforementioned federal

11  and state laws, as the anti-kickback laws and the Stark Law are restrictions that are

12  widely known among physicians practicing at major hospitals in California, as a

13  result of frequent notices and press releases from the USDHHS OIG as well as

14  Continuing Medical Education on the subject.

15

16      60.   The United States reimbursed Defendants for these false or fraudulent

17  claims.

18

19

20  **CLAIM II**

21  **CALIFORNIA FALSE CLAIMS ACT**

22  **(Cal. Gov't. Code § 12651)**

23

24  *(Against all Defendants)*

25      61.   Relator realleges and incorporates the above paragraphs as though

26  fully set forth herein.

27

28

FENTON LAW
GROUP LLP

**FIRST AMENDED COMPLAINT**

62.     The California False Claims Act is substantially similar to the federal False Claims Act.

63.     Relator is informed and believes, and thereon alleges Defendants, acting either on their own behalf or through its physicians and administrative staff and under supervision of its officers, knowingly or in reckless disregard of the truth engaged in a pattern of patient referrals which was in direct violation of state and federal laws, including 42 U.S.C. section 1320a-7b, 42 U.S.C. section 1395nn, California Business and Professions Code section 650 *et seq*., California Health and Safety Code section 445, California Welfare and Institutions Code section 14107.2, and California Business and Professions Code section 2273(a).

64.     Defendant knowingly, or in reckless disregard of the truth, made or caused to be made false and/or fraudulent medical records to be presented for reimbursement, and knowingly or in reckless disregard of the truth presented or caused to be presented false and/or fraudulent claims for reimbursement to Medi-Cal, a joint federal-state health insurance program.

65.     The claims submitted for reimbursement were fraudulent because they either expressly or impliedly certified that services billed for were in compliance with the aforementioned federal and state laws prohibiting bribes, kickbacks, fee-splitting, and physician self-referral.

66.     Medi-Cal claims for payment are made via claim form CMS-1500, which is the form generally used by the Defendants and by physicians at VHH in

**FIRST AMENDED COMPLAINT**

general, includes the following certification: "this claim, whether submitted by me or on my behalf by my designated billing company, complies with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment, including but not limited to the Federal anti-kickback statute and Physician Self-Referral Law (commonly known as Stark law)."

67.     Defendants knew these claims were not in compliance with the federal and state anti-kickback and physician self-referral laws because Relator brought the illegal financial arrangement to Defendants' attention through conversations and in writing between December 2017 and July 2018.

68.     Further, Defendants very likely knew even before being informed by Relator that these claims were not in compliance with the aforementioned federal and state laws, as the prohibitions set forth in California Business and Professions Code section 650 *et seq.*, California Health and Safety Code section 445, California Welfare and Institutions Code section 14107.2, and California Business and Professions Code section 2273(a) are widely known among California physicians, and the California Medical Association provides numerous press releases, seminars, and discussions about the requirements of those laws.

69.     The State of California and the United States reimbursed Defendants for these false or fraudulent claims from claims made to state and federal payers, including Medicaid (Medi-Cal).

under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule of the Federal Rules of Civil Procedure."

5.      My understanding of 31 U.S.C. section 3730(b), subdivisions (2) and (3), is that service of documents on the defendants, including the document to which this declaration is attached (captioned FIRST AMENDED COMPLAINT FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)), is not required until the case is no longer under seal or the Court otherwise orders.

I declare under penalty of perjury under the Laws of the State of California that the foregoing is true and correct.  Executed this 12th day of August, 2020.


_____

Dennis E. Lee, Declarant

**FIRST AMENDED COMPLAINT**

## DECLARATION RE: LACK OF NECESSITY OF

## PROOF OF SERVICE ON THE DEFENDANTS

I, Dennis E. Lee, declare as follows:

1.      I am an attorney duly licensed to practice in the State of California and have been duly admitted to appear before this Court.  I am one of the attorneys for Relator Arash Alborzi, M.D.

2.      Pursuant to 31 U.S.C. section 3730(b)(2), the original Complaint in this action was filed under seal.  The period of time for the seal has been extended by Stipulation Requesting Extension of Seal, filed on May 28, 2020, and granted by Order of this Court on May 28, 2020.  Pursuant to the Court's May 28, 2020 Order, "the Complaint and all other papers filed or lodged in this action shall remain sealed, to and including December 11, 2020."

3.      Concurrent with submission of the document to which this declaration is attached to the Court for filing under seal, Relator has served the United States of America and the State of California with the document to which this declaration is attached, along with an amended disclosure statement, pursuant to 31 U.S.C. section 3730(b)(2) and as noted in the attached proof of service.

4.      Pursuant to 31 U.S.C. section 3730(b)(2), "the complaint … shall not be served on the defendant until the court so orders."  Pursuant to 31 U.S.C. section 3730(b)(3), "[t]he defendant shall not be required to respond to any complaint filed

**FIRST AMENDED COMPLAINT**

**PRAYER FOR RELIEF**

WHEREFORE, Relator/Relator pray for judgment as follows with respect to all causes of action:

1.    All damages, penalties, and proceeds applicable under 31 U.S.C. § 3730(d);

2.    All damages, penalties, and proceeds applicable under Cal. Govt. Code §§ 12652(g)(2)-(3);

3.    Attorney's fees and costs;

4.    Such other relief as the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Relator hereby demands a jury trial on all issues so triable.

DATED: August 12, 2020          FENTON LAW GROUP LLP


By _____
     Dennis E. Lee
     Attorneys for Plaintiff/Relator
     ARASH ALBORZI, M.D.

FENTON LAW
GROUP LLP

-24-

**FIRST AMENDED COMPLAINT**

1

## PROOF OF SERVICE

2

3        I am a citizen of the United States and employed in Los Angeles County, California. I am
over the age of 18 and not a party to the within action. My business address is 1990 South Bundy
Drive, Suite 777, Los Angeles, CA 90025.

4

5    On August 12, 2020, I served on the interested parties the document(s) described as
**FIRST AMENDED COMPLAINT FILED UNDER SEAL PURSUANT TO 31 U.S.C.**

6    **§3730(b)(2)** by transmitting a true and correct copy thereof addressed as follows:

7    Attorney General's Office                     Attorney General of United States
California Department of Justice                U.S. Department of Justice

8    Attn: <u>False Claims Unit</u>                      950 Pennsylvania Avenue, NW
455 Golden Gate Avenue, Ste. 11000             Washington, DC 90530-0001

9    San Francisco, CA 94102-7004

10
Lisa A. Palombo, Assistant U.S. Attorney

11    United States Attorney's Office
Central District of California

12    300 North Los Angeles Street, Suite 7516
Los Angeles, CA 90012

13

14    __X__  **VIA CERTIFIED U.S. MAIL:**

15        I caused such sealed envelope(s) to be deposited in the mail at Los Angeles, California
with postage thereon fully prepaid. I am readily familiar with this firm's practice of

16        collecting and processing correspondence for mailing. It is deposited with the U.S. Postal
Service the same day in the ordinary course of business.

17

18    _____  **VIA FACSIMILE:**

19        Such document(s) were transmitted to the facsimile number(s) listed above. The facsimile
machine I used complied with Rule 2.306 and no error was reported by the machine.

20    _____  **VIA ELECTRONIC TRANSMISSION:**

21        I caused the document(s) to be sent to the person(s) at the email addresses listed in the above
Service List. I did not receive, within a reasonable time after the transmission, any electronic

22        notification or other indication that the transmission was unsuccessful.

23    __X__    (State) I declare under penalty of perjury under the laws of the State of California that the
above is true and correct.

24

25    _____    (Federal) I declare that I am employed in the office of a member of the bar of this court at
whose direction the service was made.

26

27                                        _____
                                         ALEX FRIEDMAN

28

FENTON LAW
GROUP, LLP

**PROOF OF SERVICE**